ESTATE OF DANIEL C. BLESER, DECEASED, DANIEL B. BLESER AND MYRTLE S. BLESER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96062. Promulgated March 21, 1940.

*A. L. Nash, Esq.*, and *A. F. Rankin, Esq.*, for the petitioners.
*Jonas M. Smith, Esq.*, and *F. R. Shearer, Esq.*, for the respondent.

---

OPINION.

OPPER: This proceeding presents two questions. The first is a somewhat complicated variation of the problem dealt with in *Zaida Clay*, 40 B. T. A. 562. Here the decedent, controlling stockholder of an "investment" corporation, included in his return an item reporting a dividend of that corporation. Upon examination of the corporation's return, respondent concluded that this item was not actually received by decedent; that it represented an attempt under the Revenue Act of 1932, section 104 (d),[1] to report a "distributive share" of the corporation's income, even though not distributed, thus exonerating the corporation under that section; and that decedent was accordingly chargeable, regardless of receipt, with his entire distributive share. This was considerably in excess of what he had reported and the proposed deficiency resulted.

A preliminary issue is whether the corporation was formed or availed of for the purpose described in that section. *Jennie King Mellon et al., Executors*, 38 B. T. A. 1259. We have found that it was.

---

[1] SEC. 104. ACCUMULATION OF SURPLUS TO EVADE SURTAXES.

\* \* \* \* \* \* \*

(d) The tax imposed by this section shall not apply if all the shareholders of the corporation include (at the time of filing their returns) in their gross income their entire distributive shares, whether distributed or not, of the net income of the corporation for such year. Any amount so included in the gross income of a shareholder shall be treated as a dividend received. Any subsequent distribution made by the corporation out of the earnings or profits for such taxable year shall, if distributed to any shareholder who has so included in his gross income his distributive share, be exempt from tax in the amount of the share so included.

The circumstances of its formation the year before and its use in the present year are insufficient to overcome the presumptive existence of that purpose resulting from its admitted character as a mere investment company. Only decedent's general statement that he did not intend to escape Federal taxes tends in the opposite direction.[2] And the absence of supporting evidence and of other convincing motives which exclude such an intent, as well as the unspecific nature of that testimony, deprive it of sufficient weight to overcome the presumption. See *R. L. Blaffer & Co.*, 37 B. T. A. 851; affd., 103 Fed. (2d) 487 (C. C. A., 5th Cir.) ; certiorari denied; 308 U. S. 576. Similarly, the conduct of the corporation in the present year is not so unequivocal as to disturb the presumption.[3] True, it claims to have distributed all of its dividend income, and to that extent the individual surtax was not avoided. But the corporate return discloses that an item of tax-exempt interest was not distributed. If that was exempt only from normal tax, and the record does not indicate otherwise, then the corporation was also availed of in the present year, at least in that respect, to relieve its stockholders of surtax.

That being so, respondent's conclusion is warranted if there was an election of the alternative proffered by section 104 (d). *Zaida Clay*, *supra*. The difficulty is that petitioners deny that decedent intended to elect, and contend that the distributions in question were actually made by the corporation and received by decedent in cash as dividends. In this aspect the situation is not so clear as it was in the *Clay* proceeding, where the original intention to elect was uncontested. On this controversial question of fact, however, we have made no determination since, in our view, no finding as to decedent's undisclosed intent

---

[2] Decedent's testimony as to his purposes in forming the corporation was as follows :

"Well, I heard of these family corporations and I thought that it was a wise thing to do, to incorporate under Delaware,—under the laws of Delaware, it would be a whole lot easier to divide the stock of the corporation and the stock, the other holdings that I held with the Bleser Investment Company.

\*   \*   \*   \*   \*   \*   \*

"\*   \*   \* the publicity of the income tax returns in Wisconsin, I didn't like that, and then, of course, there was the Kingsbury Breweries Company deal on at the time, I anticipated a profit, which I didn't feel as though I wanted to pay the Wisconsin tax on it."

If there were other purposes, decedent did not recall them.

[3] It is impossible to draw satisfactory inferences as to the corporation's operations and condition. The only evidence is the corporation's tax returns, concerning which decedent's tax consulant testifed :

"\*   \*   \* I will have to ask your indulgence on the balance sheet.   \*   \*   \*   I might state as a fact that probably none of the items on the balance sheet are correct.

\*   \*   \*   \*   \*   \*   \*

"Q. Why is that?

"A. Well, it is a tentative balance sheet submitted because the regulations require one, and as a matter of fact it would be impossible to furnish a correct balance sheet.

"Q. Why it that?

"A. I didn't have enough information to get up a balance sheet."

could alter the effect of his explicit statement, which was of such a nature as by itself to demonstrate an exercise of the election.

The corporation return referred to a "distribution" in the proper amount but carried it not on the line marked "dividends", but as "other debits to surplus." Nevertheless, it appeared that it was not debited to surplus. The return expressly referred to section 104 (d).[4] It called attention, presumably as confirmation, to decedent's individual return, where the item is included in his gross income as a dividend without any explanatory matter. Thus, the necessary inference from a specific reference to that portion of the act granting the right of election was nowhere contradicted or in fact seriously questioned.

These circumstances seem to us to supply the requirements of an "election." There was "a manifestation of choice"; exercise of the option was "shown by an overt act." See *Bierce, Ltd.* v. *Hutchins*, 205 U. S. 340, 346; *Schenck* v. *State Line Telephone Co.*, 238 N. Y. 308, 144 N. E. 592, 593; *Snow* v. *Alley*, 156 Mass. 193; 30 N. E. 691, 692. The decision to elect was communicated to respondent, as it must have been intended that it should be, as a part of the respective income tax returns.[5] And the fact that the assertion upon which respondent's position is founded appeared originally in the corporation's return rather than in decedent's need not be significant in the view that decedent dominated the corporation, and in fact executed its return as its president. See *Higgins* v. *Smith*, 308 U. S. 473. The advantage which the corporation derived from the statements in its return in avoiding the possibility of application of the penalty tax makes it all the more necessary that there should be no double benefit where these statements can be attributed, as they can here, to the alternative taxpayer. *Stone* v. *White*, 301 U. S. 532.

While this Board may be without power to treat the equities as decisive, it need not refrain from noting that petitioners have not been harmed by respondent's action. On the contrary, if respondent had declined to treat the two returns as an election, which petitioners now contend he should have done, and had assessed the section 104 tax against the corporation, the combined taxes of de-

---

[4] Decedent's tax consultant testified that this was the result of mistake, that the reference intended was to section 104 (c), and that the error was one of transcription.

[5] Petitioner urges that the respondent should not have relied on these returns, pointing out that a protest against the proposed deficiency was filed with the respondent in October, 1936, which "discussed in detail all matters here involved"; and that the statute of limitations still permitted recourse against the corporation. If such an attempt to avoid the result of an election could ever be successful, a point we need not decide, it must fail here because the fact is that the statute of limitations had already run in favor of the corporation. Its return covered a fiscal year beginning prior to January 1, 1934, and was thus governed not by the Revenue Act of 1934 (see section 1) but by that of 1932. The two-year statute of limitations there provided (section 275 (a)) expired in September 1936, the return having been filed in September 1934.

cedent and the corporation would have been greater than they will be, even including the entire amount of the present deficiency.[6] And it was decedent who would have borne the economic burden of the corporation's tax since he was to all intents and purposes its sole stockholder. This corporation being subject to section 104, the tax was clearly payable by corporation or stockholder. Certainly the latter is not the victim of inequity if his total burden is less than if his action had been construed as petitioners now contend it should have been.

It is, of course, inescapable, that if we sustain petitioners' contention here they will be materially benefited. But that is only because the statute has since run against resort to the corporation. That should be an added reason, if one were needed, for holding petitioners to the position decedent originally assumed. No attempt has ever been made to correct the asserted error by way of amended returns, and it is clearly too late now for such action to be considered timely. See *Wm. B. Scaife & Sons Co.*, 41 B. T. A. 278. To place upon respondent in such circumstances the responsibility of discovering at the peril of the revenue whether a return means what it fairly appears to say seems to us to create an unbearable administrative burden. See *Rose* v. *Grant*, 39 Fed. (2d) 340 (C. C. A., 5th Cir.); *Moran* v. *Commissioner*, 67 Fed. (2d) 601 (C. C. A., 1st Cir.); *Wm. B. Scaife & Sons Co., supra*. We are accordingly of the opinion that decedent must be held to have exercised an election the consequences of which his personal representatives can not now be permitted to avoid.

The second issue relates to a claimed loss by reason of the worthlessness of certain bank stock. Clark, one of petitioners' witnesses, who fortuitously is also a member of the law firm representing petitioners, testified in effect that it was apparent in 1933 that an assessment upon stockholders would have to be levied. He went further and explained his statement by pointing out that the superficial solvency of the bank indicated on its books was overcome by a report made by the Federal Deposit Insurance Corporation showing that book values were excessive. No other contrary evidence is to be found. Petitioners contend that the failure of the bank to reopen on January 2, 1934, is the identifiable event demonstrating worthlessness, and that 1934 is therefore the proper year. But if a single identifiable event is necessary it seems evident that it is furnished,

---

[6] The corporation's section 104 income was $235,054.53. Fifty percent tax thereon would be about $117,500. The total deficiency determined against petitioners is $104,247.66 and the total surtax paid by decedent as a result of his original return was $10,317.66, or an aggregate amount of tax of $114,565.32, which of course is demonstrably less than the section 104 tax above noted. Neither the deficiency nor the original surtax was confined to Bleser Investment Co. items, but no adjustment downward on that account has been made since even without any adjustment the result is clear.

not by the failure to reopen, but by the closing of the bank's doors on the last day of 1933, which, by prearrangement, was to be the end of the bank's operation. If the stock was worthless on that day, as it clearly was, this termination of the bank's business life put an end to all possibility of improvement in the future. The evidence is susceptible of only one interpretation, and that is that the stock became worthless in the year 1933 and not in 1934.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

BLACK, dissenting: I dissent from the majority opinion because I do not think the facts in the instant case show that the stockholders of the Bleser Investment Corporation elected to return the net income of the corporation on their own individual income tax returns and thus comply with section 104 (d) of the Revenue Act of 1932 and thereby relieve the corporation from the imposition of the 50 percent surtax imposed by section 104 (a).

There were three stockholders of the corporation, Daniel C. Bleser, his wife, and his son-in-law. The latter two shareholders only owned five shares each. The facts do not show that they made any attempt whatever to comply with section 104 (d). Whether it be assumed that the small amount of shares which each of these two owned were qualifying shares and were in reality beneficially owned by decedent, or whether it be assumed that the wife and son-in-law, in their own right, did own five shares each of the corporation's stock but that their interest may be disregarded under the maxim, *de minimis non curat lex*, I still don't think the facts show an attempt at compliance with section 104 (d). In *Zaida Clay*, 40 B. T. A. 562, cited in the majority opinion in support of the conclusion reached, there was a conceded intent to comply with this particular section of the statute and we properly held that the deficiency was chargeable to the taxpayer in that case. Here we have no such clear intent to comply with section 104 (d), but on the contrary the facts which are in evidence when viewed as a whole seem to me to negative any such intention. Therefore, in my judgment, if there is a deficiency because of the application of the 50 percent surtax to the corporation's income under section 104 (a), it exists against the corporation and not against the petitioners.

Also, it seems to me that there are no facts which would estop petitioners from making the defense which is now sought to be made. The Commissioner had the income tax returns of both the corporation and the decedent before him and he was bound to have seen that decedent returned only $44,501.84 as income received from the corporation, whereas, the findings of fact show that "The adjusted net income of

the corporation for its fiscal year ended June 30, 1934, as originally reported, was in excess of $200,000, and decedent's entire pro rata share of such adjusted net income would have amounted to a sum in excess of $195,000."

Under such circumstances, I am unable to see where there is anything kin to estoppel in this case. Cf. *Salvage* v. *Helvering*, 297 U. S. 106.

ARUNDELL, MURDOCK, LEECH, and TYSON agree with this dissent.